IN THE UNITED STATES DISTRICT COURT.
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROMANE CANTY-MASSEY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-23-2227 |
| VANTAGE MANAGEMENT, INC., | * | |
| Defendant. | * | |
| | * | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Vantage Management Inc.'s ("Vantage") Motion to Dismiss (ECF No. 18). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant the motion in part and deny the motion in part.[1]

---

[1] Also pending before the Court are Plaintiff Romane Canty-Massey's Motion for Clerk's Entry of Default Judgment (ECF No. 17) and Canty-Massey's Motion to Unseal Supplement to Complaint (ECF No. 23). The Court will grant the Motion to Unseal (ECF No. 23) as unopposed. As to the Motion for Clerk's Entry of Default (ECF No. 17), Federal Rule of Civil Procedure 12 provides that, unless a defendant has timely waived service under Federal Rule of Civil Procedure 4(d), a defendant must serve an answer or other responsive pleading "within 21 days after being served with the summons and complaint." Fed.R.Civ.P. 12(a)(1)(A)(i)–(ii). Here, Vantage's Answer was due on November 20, 2023. (ECF No. 13). Vantage did not file a response to the Complaint until February 9, 2024, well over two months later. (ECF No. 18). Adherence to this Court's deadlines is important. However, in light of Vantage's filing of a response to the Complaint, the Court will deny Canty-Massey's request for entry of default. The Fourth Circuit has repeatedly expressed a strong preference that, as a matter of general policy, "defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010). Canty-Massey has not alleged any

## I.   BACKGROUND[2]

### A.   **Factual Background**

Self-represented Plaintiff Romane Canty-Massey is an African American woman and is disabled. (Compl. at 6, ECF No. 1).[3] From May 1, 2021 to around May 1, 2022 she resided at a property managed by Vantage in Bethesda, Maryland with her adult son. (Id. at 1, 9). Canty-Massey alleges that from October 2021 to April 2022, the tenants directly above and below her apartment harassed and stalked her. (Id. at 6–8). Canty-Massey reported her neighbor's actions to the Montgomery County Police Department and obtained a peace order against the tenant directly below her apartment. (Id. at 7, 8). Canty-Massey alleges that she also reported the incidents to Vantage repeatedly from October 2021 to April 2022, but no action was taken against her neighbors in response to her complaints. (Id. at 6–8). Canty-Massey alleges that Vantage declined to address her complaints because of her race and sex. (Id. at 8–9).

Canty-Massey specifically states that Vantage declined her request to move her to a different apartment, declined her request to mediate a dispute with the neighbors, and

---

prejudice caused by Vantage's delayed filing. See Francis v. Fleegle, No. ELH-21-1365, 2021 WL 5742237, at *2 (D.Md. Dec. 2, 2021). Because the Court resolves the Motion to Dismiss on the merits, Canty-Massey's Motion for Clerk's Entry of Default is therefore denied.

[2] Unless otherwise noted, the Court takes the following facts from the Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[3] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

retaliated against her by citing her with a noise violation. (Id. at 7–9). Canty-Massey alleges that Vantage allowed white tenants access to the rental office but denied such access to black tenants. (Id. at 6; Supp. Compl. at 8, ECF No. 5-1). Liberally interpreting the Complaint, Canty-Massey also alleges that Vantage resolved the complaints of "non-Black" male tenants but ignored her complaints. (Compl. at 6, 8–9; Supp. Compl. at 6). Canty-Massey alleges that as a result of this purported discrimination she suffered post-traumatic stress disorder and various cardiovascular conditions, and her son suffered from a seizure. (Compl. at 10).

**B.    Procedural History**

Canty-Massey filed a Complaint in this Court on August 15, 2023 (ECF No. 1), and filed a Supplement to the Complaint on September 8, 2023 (ECF No. 5). The Court granted in part Canty-Massey's motion to seal the medical records in her Supplemental Complaint. (ECF Nos. 4, 8). Canty-Massey's Complaint can be construed as asserting five claims against Vantage: (1) violation of the Violence Against Women Act (VAWA); (2) Fair Housing Act (FHA) Race/Sex Discrimination; (3) FHA Disability Discrimination and Failure to Accommodate; (4) FHA Retaliation; and (5) FHA Harassment.[4] (Compl. at 6–9). Canty-Massey seeks pain and suffering damages. (Compl. at 10).

---

[4] Canty-Massey attached 41 pages of documents to her Supplemental Complaint, including all of the email exchanges between her and Vantage. (Supp. Compl. at 3–44). While a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794

3

Canty-Massey filed a Motion for Default Judgment as to Vantage on December 15, 2023, which was denied without prejudice that same day. (ECF Nos. 15, 16). Canty-Massey filed a Motion for Clerk's Enter of Default for want of an Answer on February 8, 2024. (ECF No. 17). Vantage filed a Motion to Dismiss on February 9, 2024. (ECF No. 18). Canty-Massey filed an Opposition on February 26, 2024, (ECF No. 22), and Vantage filed a Reply on March 4, 2024, (ECF No. 24). Canty-Massey filed a Motion to Unseal the Supplement to the Complaint on February 27, 2024. (ECF No. 23).

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it

---

F.Supp.2d 602, 611 (D.Md. 2011), this general rule is subject to several exceptions. For example, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to briefing for the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Courts may also consider documents referred to and relied upon in the complaint—even "if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001). The documents here were attached to the Supplemental Complaint and are integral to the Complaint, which references and relies on them, and there is no debate as to their authenticity. As such, the Court will consider these documents.

4

does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

5

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see Spencer v. Earley, 278 F.App'x 254, 259–60 (4th Cir. 2008) ("Dismissal of a pro se complaint . . . for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting Haines v. Kerner, 404 U.S. 519, 521 (1972))). Nonetheless, "liberal construction does not absolve Plaintiff from pleading a plausible claim." Desgraviers v. PF Frederick, LLC, 501 F.Supp.3d 348, 351 (D.Md. 2020) (quoting Bey v. Shapiro Brown & Alt, LLP, 997 F.Supp.2d 310, 314 (D.Md. 2014)).

**B.     Analysis**

**1. Violence Against Women Act Claim**

Canty-Massey asserts federal question jurisdiction over claims arising under VAWA, 34 U.S.C. § 12471 et seq. (Compl. at 4).[5] The Supreme Court in United States v. Morrison held unlawful the federal civil remedy provision of VAWA. 529 U.S. 598, 617 (2000). Circuit courts have clearly stated that it follows that "there is no civil private remedy under VAWA." Esposito v. New York, 453 F.App'x. 37, 39 (2d Cir. 2011); see also United States v. Morales-De Jesus, 372 F.3d 6, 10 (1st Cir. 2004). Because no private cause of action exists under VAWA, any claims Canty-Massey asserts under VAWA must be dismissed

---

[5] Canty-Massey cited to the incorrect location of the Act.

with prejudice.

### 2. Fair Housing Act Claims

Canty-Massey raises a variety of FHA claims arising from Vantage's failure to resolve her complaints or otherwise take action regarding her neighbors' harassment including sex discrimination, race discrimination, disability discrimination, retaliation, and harassment. The Court will evaluate each claim in turn.

#### i. Sex and Race Discrimination

The FHA prohibits discrimination in rental housing or "in the provision of services or facilities in connection therewith" on the basis of race, color, religion, sex, national origin, familial status, or disability. 42 U.S.C. §§ 3604(a), (b). "[A]n FHA claim can proceed under either a disparate-treatment or a disparate-impact theory of liability. . . ." Reyes v. Waples Mobile Home Park Ltd. P'ship, 903 F.3d 415, 421 (4th Cir. 2018). "Under a disparate-treatment theory of liability, a 'plaintiff must establish that the defendant had a discriminatory intent or motive,' whereas 'a plaintiff bringing a disparate-impact claim challenges practices that have a disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale.'" Id. (quoting Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities, 576 U.S. 519, 524 (2015)).

To establish an FHA disparate treatment claim, a plaintiff must show that "he is a member of a protected class and that he was treated differently than other tenants because of his membership in that class." Roberson v. Graziano, No. WDQ-09-3038, 2010 WL

7

2106466, at *2 (D.Md. May 21, 2010), aff'd, 411 F.App'x. 583 (4th Cir. 2011). A plaintiff may proffer either direct or indirect evidence of discriminatory intent, or make a showing of discrimination through the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting framework. See Martin v. Brondum, 535 F.App'x 242, 244 (4th Cir. 2013). Direct or indirect evidence of discriminatory intent includes "conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested . . . decision." Laing v. Fed. Express Corp., 703 F.3d 713, 717 (4th Cir. 2013) (internal quotation marks omitted). If a plaintiff does not present direct evidence of discrimination, she must proffer sufficient circumstantial evidence to satisfy the McDonnell Douglas analytical framework. See Martin, 535 F.App'x at 244 (applying McDonnell Douglas to FHA claim). Under this framework, the plaintiff must first establish a prima facie case of discrimination. Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000). Subsequently, the defendant may respond by producing evidence that it acted with a legitimate, nondiscriminatory reason. Id. Finally, the plaintiff may present evidence showing that the defendant's proffered reason was mere pretext and that the plaintiff's membership in a protected class was the real reason for the defendant's less favorable treatment of the plaintiff. Id.

An FHA disparate-impact claim is analyzed under a three-step, burden-shifting framework. Reyes, 903 F.3d at 424. First, "the plaintiff must demonstrate a robust causal connection between the defendant's challenged policy and the disparate impact on the

8

protected class." Id. The burden then shifts to the defendant to "state and explain the valid interest served by their policies." Id. (quoting Inclusive Communities, 576 U.S. at 541). Finally, the burden shifts back to the plaintiff to prove that the defendant's purported interests "could be served by another practice that has a less discriminatory effect." Id. (quoting Inclusive Communities, 576 U.S. at 527).

Here, Canty-Massey alleges a disparate-treatment theory of discrimination,[6] arguing that Vantage treated her differently from her white, Asian, and male neighbors because of her race and sex. It is undisputed that Canty-Massey belongs to protected classes. (Compl. at 6). Canty-Massey does not put forward any direct evidence of discrimination. She does not allege that Vantage employees made any statements or engaged in conduct that without inference showed racial animus. Accordingly, the Court will proceed under the McDonnell Douglas framework.

Canty-Massey has put forward a prima facie case of race and sex discrimination. Canty-Massey does not allege that Vantage discriminated against her on the basis of race or sex in regard to the rental of the property itself. Rather, Canty appears to allege discrimination in the "provision of services or facilities in connection" with rental of a property under 42

---

[6] To the extent Canty-Massey alleges Vantage should be liable under the FHA for race or sex discrimination under a disparate-impact theory of discrimination, that claim fails. The Fourth Circuit has articulated a higher pleading standard for a prima facie case of disparate-impact discrimination than disparate-treatment discrimination, and Canty-Massey has not demonstrated a robust causal connection between the policy by Vantage and a disparate impact on a protected class. Reyes, 903 F.3d at 424 (emphasis added).

9

U.S.C. § 3604(b). Liberally construing the Complaint, Canty-Massey alleges that Vantage allowed white, Asian, and male tenants access to facilities and services that were not provided to black, female tenants like Canty-Massey. (Supp. Compl. at 6). The Vantage property manager met with white tenants in her offices while she only met with black tenants in the hallway and purportedly "treat[ed] other black women unprofessional[ly] and harsh in comparison to white tenants." (Compl. at 6, 9; Pl.'s Opp'n Def.'s Mot. Dismiss ["Opp'n"] at 3, ECF No. 22). The same Vantage employee also allegedly discriminated against Canty-Massey by "show[ing] favor to the white tenant and (Asian) tenant," both men, who harassed her by "protecting him from the police" and not "admonish[ing] him for his behavior," including excessive noise, while citing Canty-Massey for noise complaints by her neighbors. (Id.).

The Supreme Court has instructed that provisions of the Fair Housing Act be read broadly. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 380 (1982) (referring to the "broad remedial intent of Congress embodied in the" FHA). Broadly reading the language of the FHA, Canty-Massey has plausibly alleged that because of her race she was denied access to facilities, including the rental office, that other tenants had access to. See Comm. Concerning Cmty. Improvement v. Modesto, 583 F.3d 690, 713 (9th Cir.2009) ("[T]he reach of the [Fair Housing Act] encompasses claims regarding services or facilities perceived to be wanting after the owner or tenant has acquired possession of the dwelling."). Canty-Massey has also plausibly alleged that because of her race and sex, she

10

was treated differently than her white and Asian male neighbors regarding the service of resolving complaints. See Mehta v. Beaconridge Improvement Ass'n, 432 F.App'x 614, 617 (7th Cir. 2011) (holding that the pro se plaintiff stated claim for discrimination under Fair Housing Act based on allegations that homeowners' association "doled out privileges and services to white homeowners, while withholding them from his family"). Under a disparate-treatment theory of discrimination, a "plaintiff must establish that the defendant had a discriminatory intent or motive." Reyes, 903 F.3d at 421. To show discriminatory intent, Canty-Massey states in her Opposition that Vantage has "ignorance, hate and prejudice" against her and her son and cites to past litigation against Vantage as evidence of Vantage's "history of racially profiling and discriminating."[7] (Opp'n at 3–4; Compl. at 9). Liberally construing Canty-Massey's complaint and taking all factual allegations in the light most favorable to Canty-Massey, as the Court must at this stage, the Court cannot say beyond doubt that Canty-Massey "can prove no set of facts in support of [her] claim which would entitle [her] to relief." Haines v. Kerner, 404 U.S. 519, 521 (1972).

Nowhere in its Motion to Dismiss or Reply does Vantage put forward evidence that it acted with a legitimate, nondiscriminatory reason in denying Canty-Massey access to the rental office or purportedly resolving the complaints of Canty-Massey's Non-Black, male

---

[7] The court can consider additional facts alleged in a pro se litigant's response brief due to the court's obligation to construe liberally a pro se Complaint. Rush v. Am. Home Mortg., Inc., No. WMN–07–0854, 2009 WL 4728971, slip op. at 3 (D.Md. 2009).

11

neighbors. Accordingly, Vantage has not met its burden, and Vantage's Motion to Dismiss is denied as to Canty-Massey's claims of sex and race discrimination under the FHA.

### ii. Disability Discrimination

Canty-Massey also alleges that Vantage discriminated against her on the basis of her disability and failed to accommodate her disability in violation of the FHA. (Compl. at 6–7). The FHA makes it unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). The statute defines discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." Id. § 3604(f)(3)(B). The statute defines "handicap" as:

> (1) a physical or mental impairment which substantially limits one or more of such person's major life activities,
> (2) a record of having such an impairment, or
> (3) being regarded as having such an impairment[.]

Id. § 3602(h). A plaintiff alleging a violation of the FHA on the basis of a handicap must show that "he is handicapped and that he was either discriminated against because of his handicap or denied a reasonable accommodation necessary to allow him the same use and enjoyment of his dwelling as other non-handicapped persons." Roberson, 2010 WL 2106466, at *2. As with any other FHA disparate-treatment discrimination claim, to prevail on an FHA disparate-treatment disability discrimination claim, a "plaintiff must establish

12

that the defendant had a discriminatory intent or motive." Clark v. 100 Harborview Drive Council of Unit Owners, No. JFM-14-3122, 2016 WL 1159198, at *4 (D.Md. Mar. 23, 2016) (quoting Inclusive Communities, 576 U.S. at 524) (internal quotation marks omitted).

Here, Canty-Massey's Supplemental Complaint attaches a doctor's note which identifies that she suffers from "cardiomyopathy, hypertension, and generalized anxiety disorder." (Suppl. Compl. at 44). Canty-Massey alleges this letter was sent to Vantage in March 2022, (Opp'n at 2), and that during the lease application process in 2021 she gave Vantage her Social Security Disability information and a copy of a "Guardianship of a Disabled Adult" case number. (Id. at 3). At this stage, Canty-Massey has plausibly alleged that she has a "handicap" under the FHA and that Vantage was on notice of this handicap.

Canty-Massey alleges in her Complaint that Vantage refused to provide her a reasonable accommodation for her disability. (Compl. at 7). However, her Supplemental Complaint makes clear that Vantage did provide her with several accommodation options comparable to her then rental unit. (Supp. Compl. at 13–15). Canty-Massey states that because her son had decided to move out, she could no longer afford these units and requested instead to be transferred to a subsidized apartment. (Id.). The FHA only requires that Vantage make "reasonable" accommodations that would allow Canty-Massey the same use and enjoyment of the property as other non-handicapped persons. Vantage, by offering units comparably priced to Canty-Massey's unit at the time, more than satisfied

13

this requirement. Vantage is not under any obligation through the FHA to accommodate Canty-Massey's changes in financial status or roommate status. Canty-Massey also does not state a disparate-treatment disability discrimination claim. Nowhere in the Complaint or Supplement to the Complaint does Canty-Massey allege facts that show Vantage had a discriminatory animus towards her because of her disability status. Accordingly, Vantage's Motion to Dismiss is granted as to Canty-Massey's FHA disability discrimination claims.

    **iii.**    **Retaliation**

Canty-Massey also alleges that Vantage retaliated against her in violation of the FHA. "The FHA protects individuals from discrimination by a landlord on the basis of race, color, religion, sex, national origin, familial status, or disability, and thus also protects individuals from being retaliated against by that landlord if they take actions to assert or protect the right not to be discriminated against on those bases." Jarvis v. Burnt Mills Crossing, LLC, No. TDC-14-3477, 2015 WL 5092029, at *4 (D.Md. Aug. 27, 2015). To state a claim for retaliation under the FHA, a plaintiff must establish that (1) she exercised a right granted or protected under the FHA, (2) the defendant was aware of that activity, (3) the defendant took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action. See Hall v. Greystar Mgmt. Servs., L.P., 28 F.Supp.3d 490, 495 (D.Md. 2014).

Canty-Massey has failed to state a claim for retaliation under the FHA because she has not alleged that she engaged in a protected activity or that Vantage took any adverse action

against her because of a protected activity. Canty-Massey alleges that she complained about her neighbors and requested that Vantage mediate a dispute with them and move her to a unit further away from said neighbors. (Compl. at 7). Claims based on a complaint she made about "the loud habits and possible retaliatory actions of fellow tenants is not an activity protected under the FHA." Jarvis, 2015 WL 5092029, at *4. Canty-Massey's only purported evidence that Vantage took an adverse action against her is that they refused to accommodate her mediation request and that she received "admonishment" regarding a noise complaint against her. (Opp'n at 3; Compl. at 7). These are not adverse actions under the FHA. See Hall, 28 F.Supp.3d at 497 (stating that an "adverse action" is one which "could well dissuade" a reasonable tenant from making a charge of discrimination under the FHA). Because Canty-Massey does not establish that she engaged in a protected activity or that Vantage took an adverse action against her, let alone a causal relationship between the two, her claim of retaliation under the FHA must be dismissed.

      **iv.**    **Harassment**

Canty-Massey also alleges that Vantage harassed her in violation of the FHA. Courts have held that the FHA prohibits discriminatory harassment that unreasonably interferes with the use and enjoyment of a home—by another name, a hostile housing environment. Krueger v. Cuomo, 115 F.3d 487, 491 (7th Cir. 1997); DiCenso v. Cisneros, 96 F.3d 1004, 1008 (7th Cir. 1996). "A hostile-housing-environment claim requires a plaintiff to show that: (1) she endured unwelcome harassment based on a protected

15

characteristic; (2) the harassment was severe or pervasive enough to interfere with the terms, conditions, or privileges of her residency, or in the provision of services or facilities; and (3) that there is a basis for imputing liability to the defendant." Wetzel v. Glen St. Andrew Living Cmty., LLC, 901 F.3d 856, 861–62 (7th Cir. 2018). While Canty-Massey alleges that her neighbors harassed her, she does not allege that any conduct by Vantage constituted harassment or caused a hostile housing environment or that any conduct by her neighbors can be imputed to Vantage. To the extent Canty-Massey alleges Vantage should be liable under the FHA for being deliberatively indifferent to her neighbors' harassment, the claim fails. Canty-Massey does not allege that Vantage had substantial control over her neighbors, and "[t]he typical powers of a landlord over a tenant—such as the power to evict—do not establish the substantial control necessary to state a deliberate indifference claim under the FHA." Francis v. Kings Park Manor, Inc., 992 F.3d 67, 75 (2d Cir. 2021). Accordingly, Canty-Massey's claim for FHA Harassment must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court will deny Vantage's Motion to Dismiss (ECF No. 18) as to Canty-Massey's claims for race and sex discrimination under the FHA. The Motion is otherwise granted. A separate Order follows.

Entered this 11th day of June, 2024.

/s/
George L. Russell, III
United States District Judge
