IN THE UNITED STATES DISTRICT COURT.
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROMANE CANTY-MASSEY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-23-2227 |
| VANTAGE MANAGEMENT, INC., | * | |
| Defendant. | * | |
| | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Vantage Management, Inc.'s ("Vantage") Motion for Summary Judgment (ECF No. 49). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant the Motion.[1]

---

[1] Also pending before this Court is Vantage's unopposed Motion to Strike (ECF No. 48). Vantage seeks to strike discovery documents filed by Canty-Massey in response to Vantage's Requests for Production. (Def.'s Mot. Strike at 2, ECF No. 48). Local Rule 104.5 provides, in pertinent part, that "[u]nless otherwise ordered by the Court, written discovery requests, responses thereto, notices of service of discovery requests or responses, depositions, and disclosures under Fed. R. Civ. P. 26(a)(1) and (2) shall not be filed with the Court." Local Rule 104.5 (D.Md. 2023). Accordingly, the Court will grant Vantage's Motion and strike the November 7, 2024 Correspondence from Romane Canty-Massey re: Production Request by Defendant, (ECF No. 47), and the documents attached thereto from the docket.

## I. BACKGROUND

### A. Factual Background

The Court provided a complete description of the facts and law at issue in this case in its June 11, 2024 Memorandum Opinion, (ECF No. 26), which it incorporates here by reference. The Court will not repeat that description in its entirety and will instead provide a brief summary.

Self-represented Plaintiff Romane Canty-Massey is an African American woman and is disabled. (Compl. at 6, ECF No. 1).[2] From May 1, 2021 through April 30, 2022, she resided at Pooks Hill Tower and Court, a property managed by Vantage. (Vantage Aff. ¶¶ 4–5, ECF No. 49-3). Canty-Massey alleges that from October 2021 to April 2022, Vantage treated her less favorable than male and non-African American tenants by denying her access to the property's leasing office that other tenants had access to and by resolving the complaints of other tenants while ignoring her complaints about harassment from other tenants. (Compl. at 6, 8–9; Supp. Compl. at 6, 8, ECF No. 5-1).

### B. Procedural History

Canty-Massey filed a Complaint in this Court on August 15, 2023, (ECF No. 1), and filed a Supplement to the Complaint on September 8, 2023, (ECF No. 5). The Court granted in part Canty-Massey's Motion to Seal the medical records in her Supplemental Complaint. (ECF Nos. 4, 8). The Court construed Canty-Massey's Complaint as asserting

---

[2] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

five claims against Vantage: (1) violation of the Violence Against Women Act ("VAWA"); (2) Fair Housing Act ("FHA") Race/Sex Discrimination; (3) FHA Disability Discrimination and Failure to Accommodate; (4) FHA Retaliation; and (5) FHA Harassment. (Compl. at 6–9). Canty-Massey filed a Motion for Default Judgment as to Vantage on December 15, 2023, which was denied without prejudice that same day. (ECF Nos. 15, 16). Vantage filed a Motion to Dismiss on February 9, 2024, (ECF No. 18), which the Court granted as to all but the FHA race and sex discrimination claims. Accordingly, Canty-Massey's only remaining claims against Vantage are for FHA race and sex discrimination.

Vantage filed a Motion for Summary Judgment on December 9, 2024 (ECF No. 49). Canty-Massey filed an Opposition that same day, (ECF No. 53), and Vantage filed a Reply on December 26, 2024, (ECF No. 54). Canty-Massey moved for leave to file a Surreply on January 28, 2025, (ECF No. 56), which Vantage opposes, (ECF No. 57).[3]

---

[3] Though surreplies are generally not permitted, see Local Rule 105.2(a), the Court in its discretion may allow a party to file a surreply. EEOC v. Freeman, 961 F.Supp.2d 783, 801 (D.Md. 2013), aff'd in part, 778 F.3d 463 (4th Cir. 2015). This discretion is typically used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs. See Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003), aff'd, 85 F.App'x 960 (4th Cir. 2004). Courts have also used this discretion to permit self-represented parties to file surreplies even where no new matters were raised in the reply brief. See Williams v. Bartee, No. CCB-10-935, 2011 WL 2842367, at *2 (D.Md. July 14, 2011) (permitting pro se party to file surreply that does not address new material but also does not "unduly prejudice defendants"), aff'd sub nom. Williams v. Merritt, 469 F.App'x 270 (4th Cir. 2012). Although Vantage did not raise new arguments in its Reply, the Court will consider Canty-Massey's Surreply due to her self-represented status. Further, the Court finds that because the arguments contained in Canty-Massey's Surreply do not change the outcome of its analysis below, Vantage will not be unduly prejudiced by them. Accordingly, the Court will grant Canty-Massey's Motion for Leave, (ECF No. 56), and consider her Surreply below.

## II. DISCUSSION

### A. Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

4

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Id. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 247).

**B.    Analysis**

The FHA prohibits discrimination in rental housing or "in the provision of services or facilities in connection therewith" on the basis of race, color, religion, sex, national origin, familial status, or disability. 42 U.S.C. §§ 3604(a), (b). "[A]n FHA claim can proceed under either a disparate-treatment or a disparate-impact theory of liability. . . ." Reyes v. Waples Mobile Home Park Ltd. P'ship, 903 F.3d 415, 421 (4th Cir. 2018). In this case, Canty-Massey alleges a disparate-treatment theory of discrimination. (Compl. at 6–

10).[4] "Under a disparate-treatment theory of liability, a 'plaintiff must establish that the defendant had a discriminatory intent or motive.'" Reyes, 903 F.3d at 421 (quoting Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities, 576 U.S. 519, 524 (2015)).

To establish an FHA disparate treatment claim, a plaintiff must show that "he is a member of a protected class and that he was treated differently than other tenants because of his membership in that class." Roberson v. Graziano, No. WDQ-09-3038, 2010 WL 2106466, at *2 (D.Md. May 21, 2010), aff'd, 411 F.App'x. 583 (4th Cir. 2011). A plaintiff may proffer either direct or indirect evidence of discriminatory intent, or make a showing of discrimination through the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting framework. See Martin v. Brondum, 535 F.App'x 242, 244 (4th Cir. 2013). Direct or indirect evidence of discriminatory intent includes "conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested . . . decision." Laing v. Fed. Express Corp., 703 F.3d 713, 717 (4th Cir. 2013) (internal quotation marks omitted). If a plaintiff does not present direct evidence of discrimination, she must proffer sufficient circumstantial evidence to satisfy the McDonnell Douglas analytical framework. See Martin, 535 F.App'x at 244 (applying

---

[4] To the extent Canty-Massey alleges Vantage should be liable under the FHA for race or sex discrimination under a disparate-impact theory of discrimination, the Court already found that claim fails. (See June 11, 2024 Mem. Op. at 9, n. 5, ECF No. 26). The Fourth Circuit has articulated a higher pleading standard for a prima facie case of disparate-impact discrimination than disparate-treatment discrimination, and the Court found that Canty-Massey did not demonstrate a robust causal connection between the policy by Vantage and a disparate impact on a protected class. See id.; see also Reyes, 903 F.3d at 424 (emphasis added).

6

McDonnell Douglas to FHA claim). Under this framework, the plaintiff must first establish a prima facie case of discrimination. Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000). Subsequently, the defendant may respond by producing evidence that it acted with a legitimate, nondiscriminatory reason. Id. Finally, the plaintiff may present evidence showing that the defendant's proffered reason was mere pretext and that the plaintiff's membership in a protected class was the real reason for the defendant's less favorable treatment of the plaintiff. Id.

Here, Canty-Massey argues that Vantage treated her differently from her white, Asian, and male neighbors because of her race and sex. (Compl. at 6–10). It is undisputed that Canty-Massey belongs to protected classes. (Id. at 6). Canty-Massey does not put forward any direct evidence of discrimination. She does not allege that Vantage employees made any statements or engaged in conduct that without inference showed racial animus. Accordingly, the Court will proceed under the McDonnell Douglas framework.

At bottom, the Court finds that Canty-Massey has not produced sufficient evidence of intentional discrimination to create a triable issue of fact and cannot establish a prima facie case of discrimination. Canty-Massey has provided no evidence to show that she was treated different than other Vantage tenants because of her membership in a protected class. See Roberson, 2010 WL 2106466, at *2. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 323. It is well-established that if the evidence produced by the non-moving party in response to a summary judgment motion "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." Anderson, 477 U.S. at 249–50

(citations omitted). Under a disparate-treatment theory of discrimination, a "plaintiff must establish that the defendant had a discriminatory intent or motive." Reyes, 903 F.3d at 421 (quoting Inclusive Communities, 576 U.S. at 524). Canty-Massey has not produced evidence from which a finder of fact could rationally conclude that Vantage denied her access to the leasing office or failed to address her complaints regarding other tenants due to intentional discrimination on the basis of race or sex.

In regard to her allegations that she was denied access to the leasing office, (Compl. at 6–7), Canty-Massey has provided no evidence to show that she was treated differently than male or non-African American tenants. During the discriminatory period alleged, due to the COVID-19 pandemic, access to the property's leasing office was by appointment only. (Vantage Aff. ¶ 7). There is no evidence in the record that Canty-Massey requested an appointment to meet with management in the leasing office, as was the policy for all tenants at the time of the alleged discrimination. (Id. ¶ 8). As such, Canty-Massey cannot establish based on the material in the record a prima facie case of disparate-treatment discrimination in being denied access to the leasing office.

Canty-Massey has also provided no evidence that she was treated differently than other tenants in response to her request to mediate noise complaints and harassment complaints with her neighbors. While Canty-Massey has shown that she and her son requested Vantage employees to mediate their noise dispute with their neighbors, (Wade Aff. at 1, ECF No. 56-2), the record establishes that "Vantage employees are not authorized, trained, or qualified to mediate tenant disputes or criminal complaints." (Vantage Aff. ¶ 13). Canty-Massey has not put forward any evidence to show that Vantage

8

mediated disputes between other tenants or addressed harassment or criminal complaints of other tenants. Accordingly, she has not established a prima facie case of discrimination regarding Vantage's resolution of tenant complaints or disputes.

Canty-Massey's pro se status does not alleviate her burden to provide the facts necessary to demonstrate that a genuine issue of material fact remains for trial. See Simmons v. Standard Fire Ins. Co., PJM-08-1844, 2010 WL 1881843, at *3 (D.Md. May 7, 2010) ("Although pro se pleadings are 'held to less stringent standards than formal pleadings drafted by lawyers,' they 'must still set forth facts sufficient to withstand summary judgment.'" (first internal citation omitted) (quoting Symeonidis v. Paxton Capital Grp., Inc., 220 F.Supp.2d 478, 480 n.4 (D.Md. 2002))).

Even if Canty-Massey had proved a prima facie case of discrimination, Vantage puts forward sufficient evidence to show that it acted with a legitimate, nondiscriminatory reason in denying Canty-Massey access to the rental office or purportedly resolving the complaints of Canty-Massey's non-African American and male neighbors. The record establishes that no tenants, regardless of their race or sex were able to access the leasing office without an appointment during the period alleged due to the COVID-19 pandemic. (Vantage Aff. ¶ 7). The record also establishes that Vantage employees are not authorized to mediate disputes or criminal complaints of any tenants. (Id. ¶ 13). Accordingly, Vantage has shown that it treated Canty-Massey the same as other tenants in denying her entry to the leasing office without an appointment and refusing to mediate her disputes with neighbors or resolve her criminal complaints regarding neighbors. Preventing the spread of the COVID-19 pandemic in a small leasing office, (see id. ¶ 6), is a legitimate, non-

discriminatory reason to deny access to the office. Similarly, lack of training or authorization in mediating disputes or resolving criminal complaints is a legitimate, non-discriminatory reason for Vantage employees to deny Canty-Massey's requests regarding her neighbors. Canty-Massey has presented no evidence to show that Vantage's proffered reasons for denying her access to the leasing office and denying her requests to mediate her disputes with her neighbors or resolve criminal complaints concerning her neighbors are pretextual. Accordingly, Canty-Massey fails to prove discrimination under the McDonell-Douglas framework.

In her Opposition and Surreply, Canty-Massey makes claims that Vantage discriminated against her by denying her request to transfer to safe housing and failing to evict her neighbors. (Answer Def.'s Mot. Summ. J. ["Opp'n"] at 2–4, ECF No. 53; Pl.'s Opp'n Def.'s Mot. Summ. J. ["Surreply"] at 1–2, ECF No. 56-1). However, Canty-Massey's claims for Disability Discrimination, Retaliation, and Harassment under the FHA were already dismissed by the Court in its previous Opinion and Order. (June 11, 2024 Order at 1–2, ECF No. 27). Canty-Massey provides evidence of her noise complaints against her neighbors and peace orders against her neighbors. (Wade Aff. at 1–2; Emails and Peace Orders at 8–16, ECF No. 56-3). Canty-Massey also provides evidence of doctors' notes requesting that she be transferred to a new apartment. (Doctors' Notes at 1–4, ECF No. 53-1). Nonetheless, Canty-Massey has presented no evidence creating any material fact in dispute that she was treated differently than any non-African American or male neighbors, nor does she provide any evidence that Vantage acted with a discretionary intent or motive in denying her access to the leasing office or denying her requests to

mediate her disputes with her neighbors or resolve criminal complaints concerning her neighbors. Accordingly, the court will grant Vantage's Motion for Summary Judgment.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Vantage's Motion for Summary Judgment (ECF No. 49). A separate Order follows.

Entered this 20th day of February, 2025.

/s/
George L. Russell, III
Chief United States District Judge
